RECEIPT # 53781
AMOUNT $ 150 oo
SUMMONS ISSUED Y-3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. #2
DATE 2-12-04

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL GOUTHRO, individually and on behalf of a class of persons similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>GENERAL MOTORS CORPORATION,<br><br>     Defendant. | CIVIL ACTION NO:<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

## 04 CV 10292 REK

MAGISTRATE JUDGE Alexander

## INTRODUCTION

1.    Plaintiff Michael Gouthro, by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated for compensatory and exemplary or punitive damages against the above-named defendant, demanding a trial by jury for all claims for which the right to a jury trial is authorized, to redress the defendant's negligent design and/or manufacturing of defective vehicle engines that experience what is commonly known as excessive "piston slap."

## PARTIES

2.    Plaintiff Michael Gouthro ("Plaintiff"), is an individual residing in Woburn, Massachusetts.

3.    Defendant General Motors Corporation ("Defendant"), is a Delaware corporation with a principal place of business located at 300 Renaissance Center, Detroit, Michigan. Upon information and belief, Defendant conducts business in all fifty states, including Massachusetts.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. §1332.

5.     The District of Massachusetts is an appropriate venue for this litigation as Plaintiff resides in Massachusetts, purchased and operates the subject vehicle in Massachusetts, and asserts claims under Massachusetts law.  Venue in Massachusetts also is appropriate because Defendant conducts business in Massachusetts.

## FACTUAL ALLEGATIONS

### A.  Overview

6.     Defendant describes itself as the world's largest automotive corporation. According to Defendant's estimates for the year 2002, its market share of cars and trucks sold in the United States was 28.3%, and its worldwide market share was 14.9%.

7.     Defendant designs, manufactures and markets cars and trucks for sale throughout the United States, including Massachusetts, under the following brands: Chevrolet, Pontiac, GMC, Oldsmobile, Buick, Cadillac, Saturn, and HUMMER.

8.     The cars and trucks designed and manufactured by Defendant are marketed through authorized retail dealers and distributors located throughout the United States, Canada, and Mexico.

9.     Upon information and belief, Defendant's new 1999 through 2003 model year cars and trucks with 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines were sold with Defendant's New Vehicle Limited Warranty ("Defendant's Warranty"). Defendant's Warranty provides complete "bumper-to-bumper" coverage for three (3) years or thirty-six thousand (36,000) miles (50,000 miles for Cadillacs), and covers repairs to correct any vehicle defect that is related to materials or workmanship occurring during the warranty period.

2

## B. Defendant's "Piston Slap" Defect

10.    Most automobiles and light trucks sold in the United States are equipped with an internal combustion engine. In such engines, gasoline and oxygen are mixed, compressed and ignited to generate operating power. Mixture and compression takes place within cylinders, through each of which a piston moves in supposed to move in an up and down directions.

11.    When an engine is designed and/or manufactured with excessive clearance between the pistons and the sides of the cylinder walls or bores, the pistons will wobble as they move up and down within the cylinders and will slap against the sides of the cylinders. This defect is referred to as excessive "piston slap."

12.    Excessive "piston slap" causes a loud, obnoxious knocking noise, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, and reduces the power and performance of the affected vehicle. Moreover, given these problems, vehicles with such "piston slap" engines have a lower resale value.

13.    Upon information and belief, Defendant redesigned their 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines for their 1999 model year vehicles.

14.    Upon information and belief, these redesigned 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines were used in Defendant's 1999 through 2003 model year cars and trucks.

15.    These redesigned 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines are defective in design and/or in manufacturing in that there is an inordinate amount of clearance between the pistons and the sides of the cylinder walls or bores in these redesigned engines.

3

16.    This defect (i.e., the inordinate amount of clearance between the pistons and the sides of the cylinder walls or bores) causes these redesigned engines to experience excessive "piston slap."

17.    Given Defendant's negligent design and/or manufacturing of the redesigned 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines, the excessive "piston slap" defect is present in the engines at the time they leave Defendant's control.

18.    Defendant knew, or should have known, that its design and/or manufacture of an engine with an inordinate amount of room between the pistons and the cylinder walls or bores would cause excessive "piston slap."

### C.  Defendant's Technical Service Bulletins

19.    Defendant is aware of, and in fact admits, the existence of the excessive "piston slap" problem with some of its engines, as evidenced by numerous Technical Service Bulletins issued by Defendant in 2001 and 2003.

20.    Despite its awareness of the excessive "piston slap" defect it its engines, Defendant has refused to recall the affected cars and trucks (i.e., those with the 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines), and has refused to repair or replace the defective 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines.

21.    The Technical Service Bulletins issued by Defendant in 2001 and 2003 evidence Defendant's knowledge of the excessive "piston slap" defect, but they also display a self-serving attempt to avoid liability and to conceal the true nature of Defendant's negligent design and/or manufacture of its engines.

22.    Technical Service Bulletin No. 01-06-01-005, "Cold Engine Tick Noise (Replace Pistons)," which was issued on or about June 1, 2001, for Buick Century, model

4

years 2000-2001, Chevrolet Lumina, Malibu, model years 2000-2001, Pontiac Gran Prix,

model years 2000-2001 with 3.1L engines (VIN J-RPO LG8), states:

> Condition
> Some customers may comment on a ticking noise (similar, but not related to valve or lifter noise) that occurs 10-15 seconds after a cold engine start. The noise will last for 1 to 2 minutes and will fade as the engine reaches operating temperature.
>
> Cause
> The noise may be cause by excessive piston to bore clearance during cold engine operation resulting from the specific piston design used in cylinders 1 through 4.
>
> Correction
> Service pistons for cylinders 1 through 4 will now be of the same design of those used for all production 2000 and 2001 for cylinders 5 and 6, and will have polymer coated piston skirts. Pistons in cylinders 5 and 6 are not exhibiting the prescribed nose condition.
>
> Important
> Note that this is a customer annoyance issue, and does not affect the durability or life of the engine.
>
> Removal of pistons from engine cylinders 5 and 6 is NOT necessary if equipped with polymer coated pistons. It is recommended to rotate the crankshaft until the piston skirt is exposed in the lower crankcase area for inspection. Replace pistons in engine cylinder positions 5 and 6 ONLY if there is evidence of damage to the polymer coating on the piston skirt, or cylinder wall (heavy scratches) is evident.

23.    Technical Service Bulletin No. 01-06-01-011, "Information on Engine Oil

Consumption Guidelines," which was issued on or about June 1, 2001, for all 1996

through 2001 passenger cars and gasoline powered light duty trucks under 8,500 pounds,

states:

> This bulletin is being revised to add model years 2000 and 2001. Please discard Corporate Bulletin Number 76-60-04A (Section 6 – Engine).
>
> All engines require oil to lubricate and protect the load bearing and internal moving parts from wear including cylinder walls, pistons and

piston rings. When a piston moves down its cylinder, a thin film of oil is left on the cylinder wall. During the power stroke, part of this oil layer is consumed in the combustion process. As a result, varying rates of oil consumption are accepted as normal in all engines.

Oil Consumption
The accepted rate of oil consumption for engines used in the vehicles referenced is 0.946 liter (1 qt) in 3200km (2000 mi). This rate only applies to personal use vehicles, under warranty, maintained in accordance with the appropriate maintenance schedule, with less than 58,000 km (36,000 mi), or 80,450 km (50,000 mi) for Cadillac, driven at legal speeds in an unloaded condition.

Engine Wear
Piston scuffing, excessive piston-to-wall clearance, tapered or out of round cylinders, worn, damaged or improperly installed valve guides, seals and piston rings will all cause an increase in oil consumption.

24.    Technical Service Bulletin No. 01-06-01-022, "Information on Engine

Knock on Cold Start," which was issued on or about June 1, 2001, for 2001-2002

Chevrolet and GMC C/K Pickup and Utility Models with 6.0L engines (VIN U – RPO

LQ4), states:

Some of the above vehicles may exhibit an engine knock noise that begins in the first several thousand miles/kilometers of use. The knock noise is most often noticed during initial start-up and typically disappears as the engine warms up. The noise is usually more noticeable when temperature is below 10 degrees C (50 degrees F) or if the vehicle has not been used for several days.

This noise may be caused by an interaction between the piston and the cylinder wall. GM Powertrain engineering, and an analysis of engines returned with this condition, has confirmed that the noise is not detrimental to the performance, reliability or durability of the engine. The noise does not have any effect on the longevity of any of the engine components.

Important
At this time, replacing the engine assembly or pistons will not eliminate this noise. Please share the information found in this bulletin with customers who inquire about this condition. In the event they have additional questions or concerns, please advise them to contact Customer Assistance.

25.     Technical Service Bulletin No. 01-06-01-028, "Engine Knock on Cold

Start," which was issued on or about June 1, 2001, for 1999-2002 Chevrolet and GMC

C/K Pickup and Utility models and 2002 Cadillac Escalade (2 WD) with 4.8L, 5.3L or

6.0L engines (VINs V, T, U – RPOs LR4, LM7, LQ4), states:

> Some of the above vehicles may exhibit an engine knock noise that
> begins in the first 19,000-24,000 km (12,000-15,000 mi) of use. The
> knock noise is most often noticed during initial start-up and typically
> disappears within the first 5-30 seconds (may last longer in extreme cold
> temperatures). The noise is usually more noticeable on the initial start-up
> when the temperature is below 10 degrees C (50 degrees F) and may be
> more pronounced on the first cold start following a long trip.

> This noise may be caused by an interaction between carbon that has
> formed on the piston, the piston motion and the cylinder wall. GM
> Powertrain Engineering, and an analysis of engines with this condition,
> has confirmed that the noise is not detrimental to the performance,
> reliability or durability of the engine. THIS NOISE DOES NOT HAVE
> ANY EFFECT ON THE LONGEVITY OF ANY OF THE ENGINE
> COMPONENTS.

> Important
> At this time, attempts to repair this condition by replacing the engine
> assembly or pistons is not recommended.

> Please share the information found in this bulletin with customers who
> inquire about this condition. In the event they have additional questions or
> concerns, please advise your Area Service Manger.

26.     Technical Service Bulletin No. 01-06-01-028A, "Information on Engine

Knock on Cold Start," which was issued on or about March 18, 2003, for 1999-2002

Chevrolet and GMC C/K Pickup and Utility models and 2002 Cadillac Escalade (2 WD)

with 4.8L, 5.3L or 6.0L engines (VINs V, T, Z, U – RPOs LR4, LM7, L59, LQ4), states:

> This bulletin is being revised to add an additional engine to the models
> section. Please discard Corporate Bulletin Number 01-06-01-028 (Section
> 06-Engine).

7

Some of the above vehicles may exhibit an engine knock noise that begins in the first 19,000-24,000 km (12,000-15,000 mi) of use. The knock noise is most often noticed during initial start-up and typically disappears within the first 5-30 seconds (may last longer in extreme cold temperatures). The noise is usually more noticeable on the initial start-up when the temperature is below 10 degrees C (50 degrees F) and may be more pronounced on the first cold start following a long trip.

This noise may be caused by an interaction between carbon that has formed on the piston, the piston motion and the cylinder wall. GM Powertrain Engineering, and an analysis of engines with this condition, has confirmed that the noise is not detrimental to the performance, reliability or durability of the engine. THIS NOISE DOES NOT HAVE ANY EFFECT ON THE LONGEVITY OF ANY OF THE ENGINE COMPONENTS.

Important
At this time, attempts to repair this condition by replacing the engine assembly or pistons is not recommended.

27.    Technical Service Bulletin No. 01-06-01-011A, "Information on Engine Oil Consumption Guidelines," which was issued on or about July 22, 2003, for all 1996 through 2004 passenger cars and gasoline powered light duty trucks under 8,500 pounds, except Chevrolet Corvette, states:

Supercede:
This bulletin is being revised to update the Model Years. Please discard Corporate Bulletin Number 01-06-01-011 (Section 6 – Engine).

All engines require oil to lubricate and protect the load bearing and internal moving parts from wear including cylinder walls, pistons and piston rings. When a piston moves down its cylinder, a thin film of oil is left on the cylinder wall. During the power stroke, part of this oil layer is consumed in the combustion process. As a result, varying rates of oil consumption are accepted as normal in all engines.

Oil Consumption
The accepted rate of oil consumption for engines used in the vehicles referenced is 0.946 liter (1 qt) in 3200km (2000 mi). This rate only applies to personal use vehicles, under warranty, maintained in accordance with the appropriate maintenance schedule, with less than 58,000 km (36,000 mi), or 80,450 km (50,000 mi) for Cadillac, driven at legal speeds in an unloaded (for trucks) condition.

Many factors can affect an owner's concern with oil consumption. Driving habits and vehicle maintenance vary from owner to owner. Thoroughly evaluate each case before deciding whether the vehicle in question has abnormal engine oil consumption.

Gasket and External Leaks
Inspect the oil pan and engine covers for leakage due to over tightened, damaged, or out of place gaskets. Inspect oil lines and fittings for signs of leakage.

Improper Reading of the Oil Level Indicator (Dipstick)
Verify that the dipstick tube is fully seated in the block. When checking the oil level, make sure the dipstick is wiped clean before taking an oil level reading and fully depress the dipstick until the shoulder bottoms out on the dipstick tube. The dipstick should be the proper part number for the engine/vehicle that is being checked.

Not Waiting Long Enough After Running Engine to Check Oil Level
The vehicle should be allowed to sit for at least 5 minutes (20 minutes for the 3.4 L LQ1), after the engine has been shut off, before taking an oil level reading to assure the oil has had enough time to drain back into the crankcase. In order to ensure accurate results, the temperature of the oil should be close to the same temperature as the last time the oil level was checked.

Improper Oil Fill After an Oil Change
Following an oil change, verify that the proper amount and type of oil was put in the engine and that the oil level on the dipstick is not above the full mark or below the add marks. Refer to the Owner's Manual or Service Manual for information on recommended oil quantity, viscosity, and quality.

High Speed or High RPM Driving
Continuous driving at high speeds/high RPMs may increase oil consumption. Because this may not always be an everyday occurrence, it is hard to determine exactly how much the oil economy will be affect.

Towing or Heavy Usage
Towing a trailer will increase oil consumption and may cause oil consumption to fall below the normal accepted rate referenced in this bulletin for an unloaded vehicle in a personal use application. Large frontal area trailers will further increase the work required from the engine, especially at highway speeds, and thus increases the rate of oil consumption.

Crankcase Ventilation System

Verify that the positive crankcase ventilation (PCV) system is operating properly. Incorrect PCV valves, blockages, restrictions, or damage to the PCV system can result in increased oil use.

Oil Dilution (Fuel and Water)

On vehicles that are usually driven short distances, less than 8 km (5 mi), especially in colder weather, unburned fuel and condensation generated from cold engine operation may not get hot enough to evaporate out of the oil. When this occurs, the dipstick may indicate that the oil level is over-full. Subsequent driving on a trip of sufficient length to enable normal engine operating temperature for 30 minutes or more, in order to vaporize excess moisture and fuel, may give the customer the impression of excessive oil consumption.

Engine Temperature

If an engine is ran at overheated temperatures (see Owner's Manual or Service Manual) for more than brief periods, oil will oxidize at a faster than normal rate. In addition, gaskets may distort, piston rings may stick, and excessive wear may result. Verify that all cooling system components are in proper working order.

Engine Wear

Piston scuffing, excessive piston-to-wall clearance, tapered or out of round cylinders, worn, damages or improperly installed valve guides, seals and piston rings will all cause an increase in oil consumption.

Measurement of Oil Consumption

Engines require a period of time to BREAK IN so that moving parts are properly seated. Therefore, oil economy should not be tested until the vehicle has accumulated at least 6400 km (4000 mi). An exception would be allowed only if an engine is reported to be using more than 0.946 liter (1 qt) in 1600km (1000 mi).

1. Verify that the engine has no external leaks. Repair as necessary.
2. Verify that the engine is at normal operating temperature (see Owner's Manual or Service Manual).
3. Park the vehicle on a level surface.
4. Wait at least 5 minutes (20 minutes for the 3.4 L LQ1), after the engine is shut off, before checking the oil level to make sure that most of the oil has had time to drain back into the crankcase.
5. Verify that the oil level is at, but not above, the full mark on the dipstick, and that the proper viscosity and quality oil are being used as recommended in the Owner's Manual.

10

### D.  Plaintiff's Vehicle

28.     On or about January 21, 2002, Plaintiff purchased a new model year 2002 Chevrolet Silverado truck ("Plaintiff's Vehicle"), from Herb Connolly Chevrolet in Framingham, Massachusetts.

29.     Plaintiff's Vehicle has a 5.3 liter, V-8 engine, which engine was designed and manufactured by Defendant.

30.     Plaintiff's purchase of Plaintiff's Vehicle included Defendant's Warranty.

31.     In or about November 2003, while Plaintiff's Vehicle was still covered by Defendant's Warranty, the engine in Plaintiff's Vehicle began making a loud noise.

32.     When Plaintiff took Plaintiff's Vehicle to an authorized General Motors mechanic, Lannan Chevrolet in Woburn, Massachusetts, for repairs, he was told that the defect was known as "piston slap" and that it occurs in Defendant's 1999 through 2002 model year vehicles.  Plaintiff requested that repairs be made pursuant to Defendant's Warranty, but the authorized General Motors mechanic stated that Defendant would not fix the problem given that, inter alia, it would be too expensive for Defendant to do so.

33.     Plaintiff was advised by authorized the General Motors mechanic that customers who complain to Defendant's customer service office about the "piston slap" defect could receive a "component letter" that offers a five (5) year, one hundred thousand (100,000) mile warranty.

34.     Plaintiff telephone Defendant's customer service office to complain about the excessive "piston slap" defect in Plaintiff's Vehicle.  After stating that they would "check into" the matter, Defendant's customer service office offered Plaintiff the "component letter."

11

35.    Plaintiff again demanded that the excessive "piston slap" defect be repaired pursuant to Defendant's Warranty, but a supervisor in Defendant's customer service office told Plaintiff that Defendant refused to repair the defective engine in Plaintiff's Vehicle.

36.    Plaintiff's Vehicle still has not been repaired and it continues to suffer from the excessive "piston slap" defect.

## CLASS ALLEGATIONS

37.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of a class of all other persons similarly situated.  The Plaintiff Class is defined as follows:

> All persons who purchased  within the Commonwealth of Massachusetts any 1999 through 2003 model year General Motors Corporation car or truck with a 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engine.

> Specifically excluded from the Plaintiff Class are Federal Judges and Magistrates and their immediate families, Defendant, any parent, subsidiary or affiliate of Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, employees and their immediate families.

38.    There are questions of law and fact that are common to all members of the Plaintiff Class, which questions predominate over any question affecting only individual class members.

39.    The principal common questions of law and fact with respect to Defendant's defective engines are:

    a.    Whether Defendant negligently designed all or any of the 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines found in Defendant's 1999 through 2003 model year cars and trucks;

b.    Whether Defendant negligently manufactured all or any of the 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines found in Defendant's 1999 through 2003 model year cars and trucks;

c.    Whether Defendant knew or had reason to know that all or any of the 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines found in Defendant's 1999 through 2003 model year cars and trucks would experience excessive "piston slap";

d.    Whether Defendant should be required to repair or replace the defective 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines found in Defendant's 1999 through 2003 model year cars and trucks;

e.    Whether Plaintiff and the other members of the Plaintiff Class are entitled to compensatory damages;

f.    Whether Plaintiff and the other members of the Plaintiff Class are entitled to exemplary or punitive damages;

g.    Whether Plaintiff and the other members of the Plaintiff Class are entitled to declaratory relief; and

h.    Whether Plaintiff and the other members of the Plaintiff Class are entitled to injunctive relief.

40.    Common questions of law and fact predominate over individual questions.

41.    Plaintiff's claims are typical of the claims of the members of the Plaintiff Class as all claims are based on the same legal and remedial theories.

42.    Plaintiff will fairly and adequately protect the interests of all members of the Plaintiff Class in the prosecution of this action and in the administration of all matters

13

relating to the claims stated herein. Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the Plaintiff Class he seeks to represent. Plaintiff has been wronged, wishes to obtain redress of the wrong and desires that Defendant cease committing similar wrongs inflicted upon others. To that end, Plaintiff has retained counsel experienced in class action cases. Neither the representative Plaintiff nor counsel has any interest that might cause them not to vigorously pursue this action.

43.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

a.    Many of the individual members of the Plaintiff Class are not aware that they have been wronged and are thus unable to prosecute individual actions;

b.    Concentration of the litigation concerning this matter in this Court is desirable;

c.    The claims of the representative Plaintiff are typical of the claims of the Plaintiff Class;

d.    A failure of justice will result from the absence of a class action; and

e.    The difficulties likely to be encountered in the management of a class action are not great.

44.    The class is so numerous as to make it impracticable to join all members of the class of plaintiffs.

## COUNT I – NEGLIGENCE

45.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

46.    Defendant has a duty to design and manufacture its engines with reasonable care.

47.    Defendant designed and/or manufactured the 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines used in the 1999 through 2003 model year cars and trucks that were purchased by Plaintiff and the other members of the Plaintiff Class.

48.    Defendant breached its duty of care by negligently designing and/or manufacturing its 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines used in the 1999 through 2003 model year cars and trucks that were purchased by Plaintiff and the other members of the Plaintiff Class in such a way as to leave an inordinate amount of room between the pistons and the cylinder walls or bores.

49.    The inordinate amount of room between the pistons and the cylinder walls or bores in Defendant's 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines used in the 1999 through 2003 model year cars and trucks that were purchased by Plaintiff and the other members of the Plaintiff Class causes excessive "piston slap." This excessive "piston slap" defect causes a loud, obnoxious knocking noise, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, reduces the power and performance of the affected vehicle, and negatively affects the resale values of the affected vehicles.

50.    Defendant knew, or should have known, that its 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines used in the 1999 through 2003 model year cars and

trucks that were purchased by Plaintiff and the other members of the Plaintiff Class had an inordinate amount of room between the pistons and the cylinder walls or bores and that this defect would cause excessive "piston slap."

51.    The excessive "piston slap" defect in Defendant's 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines was present in the engines at the time they left Defendant's control.

52.    The excessive "piston slap" defect could have been avoided had Defendant properly designed and manufactured the engines so as not to leave excessive room between the pistons and the cylinder walls or bores.

53.    As a direct and proximate result of Defendant's negligent design and/or manufacture of its 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 and 8.1 liter engines, Plaintiff and the other members of the Plaintiff Class have purchased 1999 through 2003 model year cars and trucks with defective engines and have suffered damages as a result.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

A.    An Order certifying the Plaintiff Class under Fed. R. Civ. P. 23, and appointing Plaintiff as the class representative and Plaintiff's counsel as Class Counsel;

B.    For a declaration that Defendant's 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines used in its 1999 through 2003 model years were negligently designed and/or manufactured;

C.    For this Court to enjoin Defendant from continuing the sale of cars and trucks containing the defective 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines;

C.     For compensatory damages;

C.     For exemplary or punitive damages;

D.     For attorneys' fees;

E.     For interest and costs of suit; and

F.     For such other or further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

For the Plaintiff,

Fredric J. Ellis, BBO # 542075
Edward D. Rapacki, BBO # 411910
Joseph M. Makalusky, BBO # 631240
ELLIS & RAPACKI LLP
85 Merrimac Street
Suite 500
Boston, MA 02114
(617) 523-4800

Dated:   February 12, 2004

17